```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 14-5030(DSD/TNL)
```

Arkwright Advanced Coating, Inc.,

       Plaintiff,

v.                                        **ORDER**

MJ Solutions GmbH,

       Defendant.

    Bruce J. Koch, Esq., Thorsten Schmidt, Esq. and Schmidt LLC, 560 Lexington Avenue, 16th Floor, New York, NY 10022; Erin E. Westbrook, Esq. and Barnes & Thornburg, LLP, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402, counsel for plaintiff.

    David A. Davenport, Esq. and Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the cross-motions by petitioner Arkwright Advanced Coating, Inc. to vacate the arbitration award and respondent MJ Solutions GmbH to confirm the award. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion to confirm arbitration award and denies the motion to modify or vacate the arbitration award.

**BACKGROUND**

This arbitration dispute arises out of a 2003 non-exclusive license agreement between Arkwright[1] and respondent MJ Solutions GmbH[2] (Agreement). The Agreement grants Arkwright a license to certain patents owned by MJ Solutions in exchange for a two-percent royalty. Davenport Aff. Ex. A, at 1; id. § 3.1.1. Specifically, Arkwright has a "non-exclusive, royalty bearing license ... under the [patents] to make, use, to offer for sale, sell, or transfer Covered Product." Id. § 2.1. "Covered Product" includes any "Textile Transfer Media" covered by the patents. Id. § 1.5. In layman's terms, "Textile Transfer Media" means products that enable consumers to transfer images produced by a printer onto fabrics such as t-shirts. Section 6.2 of the Agreement permits Arkwright to withhold royalties in the event of third-party infringement as follows:

> If at any time, any third party shall infringe any [patent] to such an extent that ARKWRIGHT is placed at a substantial commercial disadvantage with respect to its operations under its license, and ARKWRIGHT so notifies [MJ Solutions] in writing, furnishing adequate evidence

---

[1] Arkwright, Inc. entered into the Agreement and, in 2008, sold substantially all of its assets - including its interests in the Agreement - to Arkwright Advanced Coating, Inc.

[2] The Agreement was originally executed by Foto-Wear. Foto-Wear subsequently transferred its interests to two other entities, which then transferred the interests to MJ Solutions in January 2011. ECF No. 6-1, at 2. The details of such transfers are immaterial to the court's decision and will not be discussed. For the sake of clarity, the court will refer to MJ Solutions and its predecessors in interest as "MJ Solutions."

2

>of the infringement, and [MJ Solutions] does not within ninety (90) days after receipt of such notice (1) abate the infringement by licensing or otherwise, or (2) bring suit against at least one infringer, ARKWRIGHT shall be entitled to withhold royalties due thereafter while infringement continues until one of these acts is effected by [MJ Solutions].

Id. § 6.2.

In August 2008, Arkwright identified certain products that it believed were infringing on the patents at issue based on product information sheets produced by the allegedly infringing companies, i.e., Cooler Concepts (under product name Perma Trans™ Dark) and Neenah (under product names Avery® Dark Fabric Transfer and Iron Man™ (Light &Dark) Offset Heat Transfer Papers). Koch Decl. Exs. 7-9. Arkwright provided the product information sheets to MJ Solutions in the fall of 2008, and in response MJ Solutions requested more specific information about the alleged infringement in order to assess whether Arkwright provided "adequate evidence of infringement" as required by the Agreement. Davenport Aff. Ex. A § 6.2. Arkwright did not respond to the request with additional information.

On April 29, 2009, Arkwright wrote a letter to MJ Solutions stating that the above-identified infringing products placed it at a "substantial commercial disadvantage" and that it would withhold royalties under § 6.2 of the Agreement. Koch Decl. Ex. 10. Based on the record, it appears that MJ Solutions did not respond to the letter until March 29, 2013, when counsel for MJ Solutions provided

3

written notice of default of the Agreement due to Arkwright's failure to pay royalties since March 31, 2009. Id. Ex. 11; see also Davenport Aff. Ex. A § 7.4 (default provision). MJ Solutions challenged Arkwright's earlier claim that third-party infringement put it at a "substantial commercial disadvantage" and demanded that Arkwright cure its default within ninety days by paying the royalties due or provide evidence of its commercial disadvantage. Koch Decl. Ex. 11.

Arkwright responded on August 7, 2013, by initiating arbitration proceedings under § 11.1 of the Agreement. MJ Solutions filed counterclaims. The arbitration hearing took place from October 6-9, 2014, before arbitrator Clifford M. Greene. The two key issues presented were (1) whether Arkwright was entitled to withhold royalty payments on dark textile transfer products; and (2) whether light textile transfer products fall within the scope of the Agreement.[3]

On December 18, 2014, Greene issued a comprehensive award. See Davenport Aff. Ex. E. Relevant here, Greene determined that (1) Arkwright breached its obligation to pay royalties for the sale of dark transfer products as required by the Agreement; and (2) light transfer products are not Covered Products and were not subject to the royalty provision. Id. at 34. Greene then

---

[3] Transfer of images onto dark or light fabrics requires different intellectual property. The parties agreed that dark transfer products fall within the scope of the Agreement.

permanently enjoined Arkwright from making, using, or selling dark transfer products under the Agreement, but allowed Arkwright to honor inventory already ordered or in stores provided that Arkwright pay royalties from such sales. Id.  With respect to damages, Greene awarded MJ Solutions $388,247.44 for dark transfer royalties withheld by Arkwright up to September 26, 2014,[4] plus interest in the amount of $153,647.00. Id. at 34-35. MJ Solutions now seeks to confirm the award and Arkwright requests vacatur.

## DISCUSSION

### I. Standard of Review

The court accords a final arbitration award an "extraordinary level of deference" and is not authorized to review the merits of the award even when parties allege that the award rests on serious error. Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004).  The court may not substitute judicial resolution of disputed issues for an arbitrator's decision. United Paperworkers Int'l Union AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n.10 (1987); Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, 1064 (8th Cir. 2003).  Once parties submit a dispute to arbitration, the merits of the resulting arbitration award simply are not within the purview of the court.  Gas

---

[4] Any damages accruing after that date had not yet been tallied and Greene required Arkwright to provide an accounting to MJ Solutions to determine the proper amount. Id. at 35.

Aggregation, 319 F.3d at 1064. The court must confirm an award so long as an arbitrator "even arguably" construes or applies the underlying contract. Stark, 381 F.3d at 798.

Arbitration awards, however, are not inviolate and the court need not merely rubber stamp the arbitrators' interpretations and decisions. Id. at 799. Pursuant to the FAA, the court may vacate an arbitration award if (1) the award was procured by corruption or fraud, (2) there is a showing of evident partiality or corruption by the arbitrators, (3) the arbitrators engaged in misconduct or (4) the arbitrators exceeded their authority. See 9 U.S.C. § 10(a)(1)-(4); Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001). Additionally, three judicially recognized grounds for vacating an arbitration award also exist. First, a court may set aside an award that is "completely irrational." Hoffman, 236 F.3d at 461 (internal quotations omitted). Second, a court may set aside an award that "evidences a manifest disregard of the law."[5] Id. (internal quotations omitted). Third, a court may vacate an arbitration award that expressly conflicts with a "well defined and dominant" public policy. Misco, 484 U.S. at 43 (quoting W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983)); PaineWebber, Inc. v. Agron, 49 F.3d 347, 350 (8th Cir. 1995). If vacating an

---

[5] The parties disagree as to whether a manifest disregard of the law is a viable basis for vacatur. The court need not address this issue, however, because Arkwright has not come close to showing that the award reflects a manifest disregard of the law.

arbitration award is warranted, the court must vacate the award in its entirety.  Stark, 381 F.3d at 799.

## II. Exceeded Authority

Arkwright argues that Greene exceeded his authority by (1) not giving effect to an evidentiary stipulation; (2) placing the burden of proof on Arkwright to establish adequate evidence of infringement; (3) determining that MJ Solutions could not waive its rights under the Agreement unless in writing; and (4) imposing damages without an adequate basis.

### A.   Stipulation

Section 6.2 of the Agreement allows Arkwright to withhold royalty payments in the event of third-party infringement if Arkwright is placed at a "substantial commercial disadvantage," notifies MJ Solutions of that fact in writing, and furnishes MJ Solutions "adequate evidence of the infringement." A key issue in the arbitration was whether the product information sheets Arkwright sent to MJ Solutions in 2008 constituted adequate evidence of infringement. Arkwright's expert witness, Dr. William Risen, was prepared to testify that the product information sheets evidenced infringement. In order to streamline the proceedings, however, the parties stipulated to Dr. Risen's opinion as follows:

> The parties are stipulating that Dr. Risen performed an infringement analysis in this proceeding for each of the four patents in his expert report ... and compared them against the instruction sheets considered in his report.

7

> The parties further stipulate that Dr. Risen concluded that each of the instruction sheets met all of the limitations of the analyzed patents.

Koch Decl. Ex. 1, at 297:11-25. Greene concluded that Risen's testimony, stipulation included, was insufficient to establish that the product information sheets constituted adequate evidence of infringement. See Davenport Aff. Ex. E, at 12, 15. Greene did not exceed his authority in doing so. Despite Arkwright's protestations to the contrary, the plain language of the stipulation does not support its position. The stipulation established nothing more than Risen's opinion that the product information sheets "met all of the limitations of the analyzed patents." The issue presented, however, was whether Arkwright had provided MJ Solutions with adequate evidence of infringement. Greene reasonably concluded that Arkwright failed to meet that burden, particularly given MJ Solutions's unanswered request for additional information after it received the product information sheets. See id. at 14. Even if Greene's conclusion were questionable, there is no serious dispute that he arguably construed the Agreement in reaching his decision. As a result, vacatur is neither warranted nor permitted. See Stark, 381 F.3d at 798 ("[A]n award must be confirmed even if a court is convinced the arbitrator committed a serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within

the scope of his authority.'" (quoting Bureau of Engraving, Inc. v. Commc'n Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir, 2002)).

### B.   Sufficiency of the Evidence

Arkwright next argues that Greene exceeded his authority by "construing the sufficiency of the evidence for 'adequate evidence of infringement' in relation to an unknowledgeable successor licensor and not in relation to the original licensor/patentee." ECF No. 19, at 23.  In other words, Arkwright argues that Greene improperly weighed the evidence.  This is not a cognizable basis for vacatur.  See Med. Shoppe Int'l, Inc. v. Turner Invs., Inc., 614 F.3d 485, 488 (8th Cir. 2010) ("Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract."); Osceola Cnty. Rural Water Sys. Inc. v. Subsurfoco, Inc., 914 F.2d, 1072, 1075 (8th Cir. 1990) ("[C]ourts are not to review the merits of arbitration awards."); Green Tree Fin. Corp. v. ALLTEL Info. Servs., Inc., No. 02-627, 2002 WL 31163072, at *10 (D. Minn. Sept. 26, 2002) ("It is not the Court's role to substitute its own judgment for that of the arbitrator or to re-weigh the evidence.").

### C. Waiver of Rights

Arkwright also argues that the award should be vacated because Greene incorrectly dismissed its waiver defense[6] by determining that the Agreement required waivers to be in writing. Arkwright contends Greene disregarded Connecticut law,[7] which allows for implied contractual waivers, in making that determination. This argument does not provide a basis for vacatur. In making his determination, Greene arguably construed § 12.2 of the Agreement, which appears to require a written waiver of rights. See Davenport Aff. Ex. A § 12.2 ("Neither party shall claim any amendment, modification, or release from any provisions of this Agreement by mutual agreement, acknowledgment, or otherwise, unless such mutual agreement is in writing, signed by the other party, and specifically states that it is an amendment to this Agreement."). As noted above, the court is precluded from second-guessing that decision.

### D. Damages

Arkwright argues that the award should be vacated because Greene did not explain the basis for his damage award. Specifically, Arkwright argues that Greene disregarded the parties'

---

[6] Arkwright claimed that MJ Solutions waived its right contest Arkwright's § 6.2 notice by not addressing the issue in a timely manner.

[7] Connecticut law applies to the Agreement. Davenport Aff. Ex. A § 12.1.

10

agreement that the arbitrator would "issue his decision in the form of a reasoned award." Koch Dec. Ex. 2, at 2. Read as a whole, the award is reasoned. It is thorough, well written, and provides ample explanation for the decision. Although Greene did not provide a detailed explanation of his damages calculation, none was required. Once Greene determined that Arkwright was in breach of the Agreement, he simply needed to determine the gross sales of dark transfer products during the relevant period - presented during the arbitration hearing - and calculate the two-percent royalties based on those sales. As a result, Greene did not violate the parties' agreement or the law in rendering the damages award.

**III. Request for Clarification**

Arkwright next argues that the award should be remanded for clarification because it is inconsistent. Arkwright specifically notes that Greene ruled that the Agreement "may be terminated" while also granting MJ Solutions an injunction permanently enjoining Arkwright from "making, using, or selling its dark transfer products." Davenport Aff. Ex. E, at 34. The court is not persuaded that the award is ambiguous in this regard and declines to remand for clarification.

**IV. Evident Partiality**

Arkwright suggests that Greene was evidently partial or perhaps even corrupt, and that the award should be vacated on this

11

basis as well. See ECF No. 19, at 19. Arkwright fails to support such an argument with any facts, however. Indeed, there is not even a hint of bias in the award or in Greene's conduct. Absent any supporting evidence, the court cannot conclude that Greene was partial.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The petition to confirm the arbitration award [ECF No. 1] is granted; and

2. The motion to modify or vacate the arbitration award [ECF No. 17] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 2, 2015

                                       s/David S. Doty  
                                       David S. Doty, Judge  
                                       United States District Court